Trammell v. Griffin.

# H. K. TRAMMELL *v.* A. W. GRIFFIN *et al*:

## (*Knoxville.* September Term, 1918.)

1. **MUNICIPAL CORPORATIONS. Mayor. Eligibility. ''Voter.''**

Under charter of City of Jellico embodied in Acts 1093, chapter 336, sections 6, 9, 13, declaring no one eligible to office of mayor unless he shall be a citizen of the state and city, and a voter in the city, and shall have resided in the city for six months next preceding the election, the term "voter" means one having the qualifications entitling him to vote, and not one who has registered as a voter. (*Post, pp.* 140-143.)

Acts cited and construed: Acts 1903, ch. 336.

Constitution cited and construed: Art. 4, sec. 1.

2. **MUNICIPAL CORPORATIONS. Mayor. Eligibility. Registration as voter.**

Thompson-Shannon's Code, sections 1012, 1014, relating to the registration of voters, as authorized by Constitution, article 4, section 1, do not prescribe qualifications of electors, but were enacted to regulate the exercise of the elective franchise, and registration is not necessary to make one a voter in a city so as to be eligible under its charter (Acts 1903, chapter 336, sections 6, 9, 19), to election as mayor. (*Post, pp.* 143-145.)

Acts cited and construed: Acts 1903, ch. 336, secs. 6, 9, 13.

Cases cited and distinguished: Moore v. Sharp, 98 Tenn., 491; State v. Weaver, 122 Tenn., 198.

Codes cited and construed: Secs. 1210, 1214 (T.-S.).

Constitution cited and construed: Sec. 1, art. 4.

---

*On the question of registration as a condition of right to vote, see note in 25 L. R. A., 480.

FROM CAMPBELL.

ERROR to the Criminal and Law Court of Campbell County.—Hon. XEN HICKS, Judge.

E. H. POWERS and L. D. SMITH, for appellant.

JOHN JENNINGS, JR., and L. H. CARLOCK, for appellees.

MR. JUSTICE GREEN delivered the opinion of the Court.

This suit challenges the eligibility of defendant Griffin to hold the office of mayor of Jellico, to which office he was elected in January, 1918. From a judgment in favor of the defendant contestant has appealed in error.

The proposition of plaintiff in error is that Griffin was not a qualified voter of the city of Jellico at the time of his election to the office of mayor, and it is urged that Griffin is accordingly incapable of holding said office by reason of certain provisions of the charter of that city.

The election was held January 5, 1918, Griffin did not register in August, 1917, or at the supplemental registration held twenty days prior to the election. He did register in August, 1915, and had paid his poll tax for 1917. He has been a *bona-fide* resident and citizen of Jellico since 1914.

The present charter of the city of Jellico is embodied in chapter 336 of the Acts of 1903. Section 6 of that act is as follows:

"Be it further enacted, that the officers of the city of Jellico to be chosen by the people shall be a mayor and six (6) aldermen, who shall constitute the city council, each of whom shall be a citizen of and voter in said city; said mayor and board of aldermen shall be chosen by the voters of said city every two (2) years. No person shall be eligible to the office of mayor or alderman unless he has been for six months, and then be a *bona-fide* resident of the city. Any of said officers removing from the city shall thereby vacate his said office."

Section 13 of the act is in these words:

"Be it further enacted, that the mayor shall hold his office for two years, and until his successor shall be elected and qualified. No person shall be elected mayor who is not at the time of his election a citizen of the State of Tennessee, and has not been for six months, and is not thus a *bona-fide* citizen of and voter in said city."

Does the word "voter," as used in said charter, mean a person having the qualifications entitling him to vote, or does it mean such a person who has registered and thus lawfully evidenced his right to vote—in other words, a registered voter? This is the question for determination.

Section 9 of chapter 336 of the Acts of 1903 is in these words:

"Be it further enacted, that the election for mayor and board of aldermen of said city of Jellico shall be held by the marshal of the corporation, aided by two clerks only, and three judges, all of whom shall be legal voters in said city, on the first Saturday in January of every two years, after giving ten days' notice. The

voters shall vote by ballot and under such rules and regulations as the board of mayor and aldermen shall prescribe as to the place, house, etc., of voting by ordinance. The officers of the city thus chosen shall go into office on the third Saturday in January, to hold office for two years, or until their successors are elected and qualified. The following shall be the qualifications for voting in city elections:

"1. He shall be qualified to vote for State and county officers.

"2. He shall have resided for six months next preceding the election within the city limits, or shall be a male and a *bona-fide* owner of real estate within the city limits.

"3. A voter's residence is hereby defined as the place at which he habitually sleeps."

From the foregoing it appears that a qualified voter in State and county elections becomes a qualified voter in Jellico city elections if he reside in that municipality, or own property therein. Residence or ownership of property in that city are the only additional and peculiar qualifications of voters in Jellico.

The contention of plaintiff in error is that registration is a condition precedent to voting in those parts of the State to which our registration laws apply, and that an elector cannot be described as a qualified voter unless he is registered.

This argument is plausible, but it leads into grave constitutional difficulties.

Section 1 of article 4 of the Constitution of Tennessee is in these words:

"Every male person of the age of twenty-one years, being a citizen of the United States, and a resident of this State for twelve months, and of the county wherein he may offer his vote for six months, next preceding the day of election, shall be entitled to vote for members of the General Assembly and other civil officers for the county or district in which he resides; and there shall be no qualification attached to the right of suffrage, except that each voter shall give to the judges of election where he offers to vote, satisfactory evidence that he has paid the poll taxes assessed against him, for such preceding period as the legislature shall prescribe, and at such time as may be prescribed by law; without which his vote cannot be received. And all male citizens of the State shall be subject to the payment of poll taxes and to the performance of military duty, within such ages as may be prescribed by law. The General Assembly shall have power to enact laws requiring voters to vote in the election precincts in which they may reside, and laws to secure the freedom of elections and the purity of the ballot box."

The Constitution forbids that any qualification be attached to the right of suffrage, except that the legislature may prescribe poll tax regulations.

This court has repeatedly held that our registration laws did not impose an additional qualification on the right of suffrage.

The court has quoted and approved a statement from Cooley on Constitutional Limitations, page 601, that:

"The provision for a registry deprives no one of his right, but is only a reasonable regulation under

which the right may be exercised." *Moore* v. *Sharp,* 98 Tenn., 491, 499, 41 S. W., 587, 589.

Into later case, the court said: "The registration laws of the State do not prescribe qualifications of electors, but were enacted for the purpose of regulating the exercise of the elective franchise, and are authorized by the concluding clause of section 1, art. 4, of th' Constitution, ordaining that the General Assembly shall have power to enact laws to secure the freedom of elections and the purity of the ballot box." *State* v. *Weaver,* 122 Tenn., 198, 122 S. W., 465.

In Ruling Case Law it is said that: "The theory upon which registration laws may be supported is that they do not impair or abridge the elector's privilege, but merely regulate its exercise by requiring evidence of the right. . . . The requirement of registration does not add new qualification, unless such voter is deprived of the right to prove himself to be an elector, or, as it has been held, is denied the right to register and vote at any time prior to the closing of the polls on election day." 9 R. C. L., p. 1036.

So it is obvious, from the authorities quoted, that we cannot properly speak of registration as a qualification for voting in State and county elections. One qualified to vote in those elections is likewise a qualified voter in Jellico, provided he resides there, or owns property there. It follows that registration is not necessary to make one a "voter in said city."

An inspection of our election and registration laws demonstrates that the word "voter" is used therein in

the sense of one who is qualified to vote, and not in the sense of a registered voter.

Thus, in section 1210 of Thompson's Shannon's Code, it is made a misdemeanor for any registrar of voters to willfully refuse "to register any qualified voter."

In section 1214, Thompson's Shannon's Code, prescribing the oath for registrars of election, it is provided that they shall swear that they will not "knowingly register, or allow to be registered, any person not a legally qualified voter," and that they will not prevent "any person from registering who is a legally qualified voter."

In these and other sections of the Code, the word "voter" is used to describe a person entitled to register, and not a person actually registered. Indeed, it appears from the sections quoted persons are referred to as "qualified voters" before registration.

Such being the general meaning given to the word "voter" by the legislature, we think it was used in this sense in the act incorporating the city of Jellico, and that the defendant was a voter in said city within the meaning of that statute at the time of his election, although he had not actually registered so as to be able to participate in that election.

It is not necessary to discuss other questions in the case.

For the reasons stated, the judgment of the trial court will be affirmed.