C. V. T. GILBERT, Appellant, *v.* JACK BREI-
THAUPT, Respondent.

No. 3298

June 29, 1940.                    104 P.(2d) 183

*Ham & Taylor,* for Appellant.

*Harold M. Morse,* for Respondent.

## OPINION

By the Court, TABER, C. J.:

Respondent commenced an action in the Eighth judicial district court, county of Clark, praying that court to declare null and void the certificate of election issued to appellant as city commissioner of the city of Las Vegas, and to declare said office vacant.

In his complaint plaintiff, respondent here, alleges that defendant was not a qualified voter of the city of

Las Vegas, or of the county of Clark, or of the State of Nevada, for at least two years immediately preceding his election, and was therefore not a qualified candidate for said office, either at the time he signed his declaration of candidacy or at the time of his election. The complaint further alleges: "That plaintiff and contestant alleges and states that said C. V. T. Gilbert, defendant and contestee, within two years immediately preceding the general municipal election of the city of Las Vegas, Clark County, Nevada, as hereinbefore set forth, did not register as required by the constitution and laws of the State of Nevada to become a qualified voter of the city of Las Vegas, county of Clark, State of Nevada, and that by reason thereof, to wit; on November 21, 1938, his name was canceled from and stricken from the list of qualified voters of the city of Las Vegas, Clark County, Nevada, and so remained stricken and canceled from the list of qualified voters of the city of Las Vegas, Clark County, Nevada, from said date continuously to and including May 2, 1939, and date of the general municipal election of the city of Las Vegas, Clark County, Nevada, and therefore ineligible to be a candidate for, or to be elected to the office of city commissioner of the city of Las Vegas, Clark County, Nevada, and therefore ineligible to be declared elected to said office, or to qualify for, or hold said office."

Defendant (appellant) demurred to the complaint upon the ground, among others, that it does not state facts sufficient to constitute a cause of action. Defendant did not file an answer. The cause came on for trial, both parties being represented, and thereafter the district court rendered its decision in favor of plaintiff as prayed in his complaint. Defendant's motion for a new trial was denied.

The city of Las Vegas was incorporated by act of the legislature approved March 16, 1911. Stats. of Nevada 1911, chap. 132, p. 145. Section 6 of said act was amended March 24, 1939. Stats. of Nevada 1939, chap.

155, pp. 209, 210. The first sentence of the section, as amended, reads: "The mayor, each of the four commissioners, the city clerk, the city attorney, and the judge of the municipal court shall not be less than 25 years of age, citizens of the United States, and for at least two years immediately preceding their election residents of the city of Las Vegas, county of Clark, State of Nevada, qualified voters who are property owners and taxpayers on real estate or personal property, situate in the city of Las Vegas, county of Clark, State of Nevada, as shown on the assessment rolls of said city of Las Vegas, county of Clark, State of Nevada, on file in the office of the county assessor and ex officio city assessor of the county of Clark, State of Nevada, for at least two years immediately preceding the year in which said election is held."

The corresponding part of the original section 6 read as follows: "The mayor and each of the said four commissioners shall not be less than 25 years of age, citizens of the United States, and for at least two years immediately preceding their election residents of the city of Las Vegas, qualified voters who are property owners and taxpayers in said city."

Respondent contends that to be a qualified voter within the meaning of said section 6, one must not only have the qualifications of an elector set forth in the state constitution, but must further be legally registered. One of appellant's contentions is that registration is not required to make one a qualified voter within the meaning of said section.

Section 1 of article II of the constitution of Nevada provides, in part, that: "All citizens of the United States (not laboring under the disabilities named in this constitution) of the age of twenty-one years and upwards, who shall have actually, and not constructively, resided in the state six months, and in the district or county thirty days next preceding any election, shall be entitled to vote for all officers that now or hereafter

may be elected by the people, and upon all questions submitted to the electors at such election. * * * "

Section 6 of said article II reads: "Provision shall be made by law for the registration of the names of the electors within the counties of which they may be residents, and for the ascertainment, by proper proofs, of the persons who shall be entitled to the right of suffrage, as hereby established, to preserve the purity of elections, and to regulate the manner of holding and making returns of the same; and the legislature shall have power to prescribe by law any other or further rules or oaths as may be deemed necessary as a test of electoral qualifications."

Section 3 of article XV of the state constitution provides, in part, that "No person shall be eligible to any office who is not a qualified elector under this constitution." It is provided in sec. 4766 N. C. L. 1929 that "No person who is not a qualified elector shall be eligible to any office of honor, profit, or trust, in and under the government and laws of this state."

In State ex rel. Schur v. Payne, 57 Nev. 286, 63 P. (2d) 921, this court approved the rule that all persons are equally eligible to office who are not excluded by some constitutional or legal disqualification; and that the right of the people to select from citizens and qualified electors whomsoever they please to fill an elective office is not to be circumscribed except by legal provisions clearly limiting the right.

■ The right to hold public office is one of the valuable rights of citizenship. The exercise of this right should not be declared prohibited or curtailed except by plain provisions of law. Ambiguities are to be resolved in favor of eligibility to office. In Carter v. Commission on Qualifications of J. A., 14 Cal. (2d) 179, 93 P. (2d) 140. In 46 C. J. at p. 937, sec. 32, it is said: "Statutes imposing qualifications should receive a liberal construction in favor of the right of the people to exercise freedom of choice in the selection of officers. Furthermore,

disqualifications provided by the legislature are construed strictly and will not be extended to cases not clearly within their scope. * * * "

■ Respondent has not cited one case involving eligibility to office or qualifications to hold office where it was held that registration was necessary to make the candidate or person elected a qualified voter. On the other hand, there are at least two jurisdictions holding that in such cases registration is not required to make one a qualified voter.

In Meffert v. Brown, 132 Ky. 201, 116 S. W. 779, 780, 1177, the question was as to the eligibility of a city commissioner. The statute provided that: "No person shall be eligible to any office who is not at the time of his election a qualified voter of the city, and who has not resided therein three years preceding his election." Ky. St. sec. 2746. In the court's opinion the chief justice of the court of appeals said: "The fact that Wood did not register cannot affect the question of his eligibility to the office of commissioner of the sinking fund. The act of registering is only one step towards voting, and it is not one of the elements that makes the citizen a qualified voter. If at the time of his election as a commissioner of the sinking fund Wood had been a resident of the city three years and by registering before any election during that time would have been entitled to vote at such election, would his failure to register have destroyed his legal status as a qualified voter? Obviously not; the only legal effect of the failure to register would be to deprive him of a vote in the election for which the registration was required. The term 'qualified voter' is defined by section 145 of the Constitution in declaring who shall be entitled to vote. One may be a qualified voter without exercising the right to vote. Registering does not confer the right; it is but a condition precedent to the exercise of the right. When the defendant, Wood, was brought into the city of Louisville, he became as fully eligible to the office he now holds as if he had

resided in Louisville three years, and in the precinct 60 days preceding his election, and had during the whole of that time registered previous to each city, county, or state election, as required by law."

In Trammell v. Griffin, 141 Tenn. 139, 207 S. W. 726, the eligibility of the defendant to hold the office of mayor was challenged. The statute read: "No person shall be elected Mayor who is not at the time of his election a citizen of the State of Tennessee, and has not been for six months, and is not thus a bona fide citizen of and voter in said city." Acts Tenn. 1903, c. 336, sec. 13. In the opinion of the court, Justice Green said in part: "Does the word 'voter,' as used in said charter, mean a person having the qualifications entitling him to vote, or does it mean such a person who has registered and thus lawfully evidenced his right to vote—in other words, a registered voter? This is the question for determination. * * * The contention of plaintiff in error is that registration is a condition precedent to voting in those parts of the state to which our registration laws apply, and that an elector cannot be described as a qualified voter unless he is registered. * * * This court has repeatedly held that our registration laws did not impose an additional qualification on the right of suffrage. The court has quoted and approved a statement from Cooley on Constitutional Limitations, page 601, that: 'The provision for a registry deprives no one of his right, but is only a reasonable regulation under which the right may be exercised.' Moore v. Sharp, 98 Tenn. 491, 499, 41 S. W. 587, 589. In a later case, the court said: 'The registration laws of the state do not prescribe qualifications of electors, but were enacted for the purpose of regulating the exercise of the elective franchise, and are authorized by the concluding clause of section 1, art. 4, of the Constitution, ordaining that the General Assembly shall have power to enact laws to secure the freedom of elections and the purity of the ballot box.' State v. Weaver, 122 Tenn. 198, 122 S. W.

465. In Ruling Case Law it is said that: 'The theory upon which registration laws may be supported is that they do not impair or abridge the elector's privilege, but merely regulate its exercise by requiring evidence of the right. * * * The requirement of registration does not add new qualifications, unless such voter is deprived of the right to·prove himself to be an elector, or, as it has been held, is denied the right to register and vote at any time prior to the closing of the polls on election day.' 9. R. C. L., p. 1036. So it is obvious, from the authorities quoted, that we cannot properly speak of registration as a qualification for voting in state and county elections. One qualified to vote in those elections is likewise a qualified voter in Jellico, provided he resides there, or owns property there. It follows that registration is not necessary to make one a 'voter in said city.' "

Respondent relies on the case of Caton et al. v. Frank, 56 Nev. 56, 44 P. (2d) 521, 523. In that case a petition was filed praying for amendment of a city charter. The statute (sec. 1257 N. C. L. 1929) provided for the filing of a petition "bearing the signatures of not less than 60% of the qualified voters of the city or town * * *." The petition filed recited that it was signed by 5,834 "qualified electors." For reasons set forth in the opinion, it was held that by "qualified voters," as used in said statute, was meant those who, in addition to being electors as provided in the state constitution, had also complied with the registration laws. But it was not held that such must be the meaning of those words in every other statutory provision. On the contrary, it was appropriately pointed out by Judge Dysart, who wrote the opinion in that case, that there is no uniform interpretation of the word "voter." "We are of the opinion," said the court, "that 'qualified elector' and 'qualified voter' are not necessarily synonymous. Whether 'qualified elector,' as used in the Constitution, and 'qualified voter,' as that term is used in section 1257 N. C. L. 1929,

are synonymous depends entirely upon the intention of the Legislature in using the term 'qualified voter.' " So in the instant case, the meaning of "qualified voters" depends upon the intention of the legislature in using that expression in section 6 of the act incorporating the city of Las Vegas.

Caton et al. v. Frank, supra, was not a case involving eligibility to, or qualifications for, office; and it is to be further observed that the statute in that case did not merely say "qualified voters," as in the case at bar, but "qualified voters of the city or town."

In cases not involving eligibility or qualifications for office, the courts differ as to whether a "qualified voter" must be registered in addition to being a qualified elector. In North Carolina registration is required. Such is the case also in South Carolina and Georgia; but in these two states their constitutions expressly require registration. McComb v. Robelen, 13 Del. Ch. 157, 116 A. 745, at page 747, latter portion first column; Shaw v. DeVane, 169 Ga. 702, 151 S. E. 347, at page 348, first column, 1, 5 from bottom. In a comparatively recent Arizona case, not cited by respondent, the supreme court held that registration is necessary. Lane et al. v. Henderson, 39 Ariz. 457, 7 P. (2d) 588, 589. In that case the statute read, "qualified voter of the city of Phoenix," not simply "qualified voter." Whether the courts in North Carolina and Arizona would hold registration necessary to constitute a qualified voter in cases involving eligibility or qualification for office, we of course cannot say.

On the other hand, in addition to Kentucky and Tennessee, Delaware, Iowa and Washington also hold registration unnecessary to constitute one a qualified voter. McComb v. Robelen, 13 Del. Ch. 157, 116 A. 745; Piuser v. Sioux City, 220 Iowa 308, 262 N. W. 551, 100 A. L. R. 1298; Hindman v. Boyd, 42 Wash. 17, 84 P. 609.

In McComb v. Robelen, supra, the statute read, "At such election every person qualified to vote at the school

election in the district shall be qualified to vote." 32 Del. Laws, c. 160, sec. 54. In the opinion, the chancellor said in part [13 Del. Ch. 157, 116 A. 746] : "Solicitors for both the complainant and defendants agree that the term 'qualified voters,' in the absence of a definition thereof in the statute employing it, is to gather its meaning from article 5 of the Constitution of the state, which deals with the subject of elections and the qualifications of voters. * * * When we·speak of the qualifications of a voter, we mean to refer to those things which must exist as going to make of him a voter, as conferring on him the absolute right to be placed among the class of persons which the law creates and calls voters. Registration, however, means an entirely different thing. It rather refers to the idea of evidencing the existence of the things which constitute a voter, a recording of the fact that the individual in question possesses the designated qualifications of a voter. * * * Qualifications are recognized as existing as distinct from a right to vote; that is to say, a voter must possess certain qualifications, the possession of which entitles him to be a voter; but the existence of these qualifications must be evidenced by registration before he is permitted to exercise his right as a voter. * * * I hold that a 'qualified voter,' within the meaning of the school law (chapter 160, volume 32, Laws of Delaware), does not mean a 'registered voter' under the Constitution and laws of this state."

In Hindman v. Boyd, supra, the court said [42 Wash. 17, 84 P. 613] : "Article 6, sec. 1, of the state constitution, defines who are qualified voters as follows: 'All male persons of the age of twenty-one years or over, possessing the following qualifications, shall be entitled to vote at all elections. They shall be citizens of the United States; they shall have lived in the ·state one year, and in the county ninety days, and in the city, town, ward, or precinct thirty days immediately preceding the election at which they offer to vote; they

shall be able to read and speak the English language.' It will be seen that registration is not an element entering into the definition of a qualified voter. It is held by eminent authority that registration laws cannot be justly regarded as adding a new qualification to those prescribed by the Constitution, but that they are merely reasonable and convenient regulations prescribing the mode of exercising the right to vote."

In view of the fact that Caton et al. v. Frank, supra, was decided nearly four years before the 1939 amendment to section 6 of the Las Vegas incorporating act was approved, it might at first be thought that in making said amendment the legislature, in using the words. "qualified voters," had in mind the interpretation placed upon them in said case; but it must be remembered, as stated early in this opinion, that those words occurred in the original section 6, passed about twenty-four years before Caton et al. v. Frank was decided.

Some support is given respondent's position by the use of the words "a qualified voter under the provisions of this act" in sec. 2391 N. C. L. 1929, being section 32 of the general registration act. And it may be further argued that if the legislature meant nothing more than qualified electors when it used the words "qualified voters" in said sec. 6, they would naturally have said "qualified electors" rather than "qualified voters." On the other hand, however, in support of appellant's position, we have to consider that the expression "registered elector" occurs in said registration act in at least two sections, 9 and 15 (secs. 2368 and 2374 N. C. L. 1929), and has occurred in those sections from the time they were originally enacted in 1917 (Stats. of Nevada 1917, chap. 231, at pp. 426, 429) to their last amendment in 1935 (Stats. of Nevada 1935, chap. 50, pp. 110, 112) and that if, by the expression "qualified voters," the legislature of 1939 had intended that registration be required, they would naturally have used the word "registered," as was done, for example, by the legislature of

North Carolina when the words "qualified registered voters" were employed. Southerland v. Town of Goldsborough, 96 N. C. 49, I. S. E. 760, 761.

In the case at bar appellant was elected by a vote of the people. He should not be ousted, unless clearly ineligible under some constitutional or statutory provision. In the light of the authorities cited, we are unable to say it is clear that registration was required in order to constitute appellant a qualified voter within the meaning of said sec. 6. As it is not questioned that appellant was at all times a qualified elector, it becomes unnecessary to determine the other questions presented on this appeal:

The judgment and order appealed from are reversed, and the cause remanded to the district court for judgment in accordance with the views herein expressed.